THOS. W. CHADWELL, Commissioner, *vs.* J. T. JONES & wife.

October Term, 1873.

PLEADING—DATES AND AMOUNTS MAY BE GIVEN IN FIGURES.—Dates and amounts may be stated in equity pleading in figures, and need not be written in words at length.

EQUITABLE REMEDY AFTER ENFORCEMENT OF LEGAL RIGHT.—A person who has a legal demand, and also a lien on property for its security to be enforced in equity, may pursue both remedies.

CONSTITUTIONAL LAW.—The act of the General Assembly of the 27th of March, 1872, ch. 3, to enforce the collection of certain unpaid taxes in this court, is constitutional.

*Jno. T. Brown,* for complainant.
*Jno. A. Campbell,* for defendants.

THE CHANCELLOR :—This is a bill filed by the complainant as commissioner of revenue for the county of Davidson, elected and qualified under the act of the General Assembly of the 27th of March, 1872, called session, ch. 3, for the purpose of collecting certain unpaid taxes due the state and county by bill filed in the chancery court in which the land lies. The taxes authorized to be collected in this mode are such as have been bid upon lands sold for a failure to pay the same, by the treasurer of the state as superintendent of public instruction for the benefit of common schools under

the law in such cases made and provided. The cause for such legislation is stated in the preamble of the act to be, that, "by reason of the irregularity and void character of said sales, the state has been defeated for many years in the collection of a large amount of taxes." By the 3d section of the act, jurisdiction of the person of the defendant is secured by service of process or publication, "in all respects as provided by law in other cases." And by the 7th section, "all necessary jurisdiction is conferred upon the chancery courts of the state to fully execute and carry out the objects and purposes of this act in each and every particular." The act further provides, by section 3, that the bill shall, as nearly as practicable, describe the lands as originally assessed, in whose name assessed, the amount assessed, and the date thereof, and the amount remaining unpaid; and allege the lien upon said land for unpaid taxes assessed against it, and shall pray for an enforcement of the same by a sale of said land, and an application of the proceeds to the payment of said taxes. Section 15 provides: "That any person whose lands may be proceeded against under this act shall have the right to pay the accrued unpaid taxes on his lands, together with six per cent. interest thereon, and all costs and charges at any time before his land may be sold under this act." The act contains various other provisions, prescribing the duties of the commissioner, the mode of sale, the mode of redemption, etc., which need not be set out in detail.

The defendants have demurred to the bill, and have assigned numerically eleven causes of demurrer. Most of these causes, however, are grounds of special demurrer to particular parts of the bill, not of general demurrer to the whole bill. Under such specifications, if any part of the relief sought is good, the whole demurrer must be overruled, although some of the assignments if confined by special demurrer to the parts of the bill in question, might have been sustained. One of these grounds of demurrer is that the taxes and costs claimed to be due are stated in figures and

not in words. But the Code, § 53, provides that: "Roman numerals and Arabic figures are to be taken as part of the English language, and are always sufficient to express dates and amounts, unless otherwise imperatively directed by law." I know of no law requiring dates and amounts to be stated in equity pleading in words at length. Another exception is, that the bill is both general and meagre, and is, therefore, without equity on its face. But the deduction is not necessarily a sequence from the premises. A bill may be both general and meagre, and yet contain equity, for it may be a case of equity defectively stated, which cannot be reached by a general demurrer for want of equity. *Quinn* v. *Leake*, *ante*, p. —. A bill may, also, be both general and meagre, and, like Mercutio's wound, "not as deep as a well nor as wide as a church door," yet enough for all practical purposes. The present bill complies substantially, I think, with the requirements of the law, and the special provisions of the act under which it has been filed.

The 3d and 4th causes of demurrer assigned are, that the bill claimed that the taxes and costs are still due, and nevertheless alleges that the lot on which they were assessed was sold to pay them, and insists that the sale was irregular and void, and does not charge this to the fault of the defendants. These assignments, like some of the allegations of the bill, contain equity somewhat defectively stated. Literally they may be true as averred, and yet admit of no conclusion essential to the defendant's rights. The point intended to be raised is, doubtless, that the bill shows that the land was sold and bid off for the amount of the taxes by the state treasurer, and therefore the taxes were extinguished, and can no longer form the basis of an action. But the bill in the same paragraph says the sale was void, and, if so, it was precisely as if it had never been made. Had the sale been valid, and only the title acquired been defective, the question would have presented some difficulty. But the bill concedes that the sale was void, and this leaves the title to the land in the owner as if no sale had taken place, and the tax

still due. If the defendants shall deny in their answer that the sale is void, the state may elect to act upon the admission and take the land, paying all costs. At present, upon the demurrer, we must treat the sale as a nullity.

The 9th assignment of demurrer is, that the bill shows on its face a legal proceeding to subject the property for the payment of the specific taxes demanded, and there cannot be another proceeding for the same thing, the matter is *res adjudicata*. This is the assignment we have just considered, changed a little in form. The bill concedes that the proceedings taken in the circuit court for the sale of the land, and, consequently, the sales are void. In that view, there is only an ascertainment by the circuit court of the amount of taxes due by an entry on the minutes of the court in the form of a judgment. The bill may intend to concede that this entry is also void as a judgment. But if it does not, the ascertainment of the taxes by judgment, like a judgment recovered at law by a vendor for unpaid purchase-money, or by a mortgagee for his unpaid mortgage debt, will not affect the lien expressly reserved on the land. The latter may be enforced in equity after, as well as before the recovery of a judgment at law for the lien debt. Such a judgment, it is well settled, is not a bar to the subsequent suit in equity to enforce the lien. And the rule is general that a person who has a legal demand and a lien to be enforced in equity may pursue both remedies. *Dunkley* v. *Van Buren*, 3 Johns. Ch. 330; *Conyer* v. *Lancaster*, 6 Yerg. 477; *Booth* v. *Booth*, 2 Atk. 343; *Davis* v. *Battine*, 2 R. & M. 76.

Lastly, it is assigned as a ground of demurrer that the act under which the bill is filed is unconstitutional and void. No special provision of the constitution is pointed out by the assignment as having been violated. The assignment only says that: "The act of the legislature upon which the bill is filed is in the nature of a drag net; it authorizes suits all over the state against citizens in relation to claims the state had already sued upon and obtained judgment, ex-

ecution and sales." But, as we have just seen, the execution and sales are conceded by the bill to be void, and the recovery of judgment on the legal demand is no bar to the enforcement of a lien in equity. And it is obvious that an act of the legislature cannot be pronounced unconstitutional and void merely upon the ground that it is "in the nature of a drag net," whatever that may mean.

The learned counsel for the defendant did not undertake, in his oral argument, to supplement the averments of his demurrer by pointing out the provisions of the constitution which have been violated by the act in question. He simply dwelt upon the hardship of compelling a reluctant citizen, who had thus far escaped his share of the burden of government, to pay his just taxes, through the intervention of this court. I have not myself been able to find anything in the act which is inequitable, much less unconstitutional. A stable government cannot be maintained, nor the peace, order and well being of the community secured except by public revenue raised by taxation. It is the constitutional duty of the legislature to see that this revenue is raised, and that every citizen furnishes his proportional part thereof. Nothing contributes more to render the payment of taxes hateful, than the knowledge that there are negligent and unscrupulous members of the community who are enabled, by the defectiveness of the laws or their defective enforcement, to escape the common burden. It is the imperative duty of the legislature, and the executive officers of the state, to provide that such instances shall be as rare as possible. Of course, it is the duty of the courts to see that in this, as in every other direction, the legislation is kept within constitutional limits. But there is no branch of sovereign power so exclusively under the control of the legislature as that of taxation, and the enforcement of lawful assessments, and there can, in the opinion of an equity judge, be no safer exercise of that power than to provide for the subjection of the property of the delinquent citizen through the instrumentality of the chancery courts. That court is entrusted with the en-

32

forcement of liens on property in all other cases, and possessed of all the machinery necessary to accomplish the end, without oppression to the citizen, and so as to secure a good title to a purchaser. The legislation under consideration is, so far as I can see, carefully guarded, and *omni exceptione major*. The demurrer must be overruled.